IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGEL PABLO MATIAS,<br><br>        **Petitioner,**<br><br>   v.<br><br>J.L. JAMISON, *et al*.,<br><br>        **Respondents.** | CIVIL ACTION NO.  26-2750 |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                    **April 30, 2026**

Petitioner Angel Pablo Matias is another individual whom the government has subjected to mandatory detention based on its newly adopted interpretation of Section 235 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1225. Before the Court is his petition under 28 U.S.C. § 2241, in which he argues that his detention without a bond hearing rests upon an unlawful interpretation of 8 U.S.C. § 1225(b)(2) and denies him due process.[1] The Court agrees that Pablo Matias cannot be subject to mandatory detention under § 1225(b)(2) because of his established residence in the United States. Consistent with the reasoning of hundreds of other rulings in this District,[2] this Court will grant Pablo Matias's petition.

---

[1] Pet. [Doc. No. 1].

[2] *See, e.g.*, *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (noting that, as of November 18, 2025, 282 of 288 district court decisions had found that the application of § 1225(b)(2) to noncitizens residing in the United States is unlawful); *Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025)*; Kashranov v. Jamison*, No. 25-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025)*; Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025)*; Patel v. McShane*, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); *Centeno Ibarra v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025)*; Flores Obando v. Bondi*, No. 25-6474, 2025 WL 3452047 (E.D. Pa. Dec. 1, 2025); *Yilmaz v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6572, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025); *Conde v. Jamison*, No. 25-6551, 2025 WL 3499256 (E.D. Pa. Dec. 5, 2025); *Bhatia v. O'Neill*, No. 25-6809, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); *Anirudh v. McShane*, No. 25-6458, 2025 WL 3527528 (E.D. Pa. Dec. 9, 2025); *Picon v. O'Neill*, No. 25-6731, 2025 WL 3634212 (E.D. Pa. Dec. 15, 2025). Since then, numerous additional decisions have ruled against the government. *See, e.g.*, *Kanaut v. Rose*, No. 25-6869, 2026 WL 36690 (E.D. Pa. Jan. 6, 2026); *Francois v. Noem*, No. 25-7334, 2026 WL 27565 (E.D. Pa. Jan. 5, 2026); *Lara Cordon v. Jamison*, No. 25-6937, 2025 WL 3756948 (E.D. Pa. Dec. 29, 2025); *Kumar v. McShane*, No. 25-6238, 2025 WL 3722005 (E.D. Pa. Dec. 23, 2025); *Alekseev v. Warden, Phila. Fed. Det. Ctr.*, No. 26-0462, 2026 WL 413439, at *1 (E.D. Pa. Feb.

## I.    BACKGROUND

Pablo Matias is a native of Guatemala who entered the United States without inspection on December 20, 2004.[3] He eventually settled in Chester, Pennsylvania, where he established his life.[4] Until his recent detention, Pablo Matias was gainfully employed, law-abiding, and living in Chester with his partner and their children, ages 14, 9, and 8.[5] His children are all United States citizens.[6] Pablo Matias has no prior criminal convictions.[7]

On April 27, 2026, Pablo Matias was arrested in Chester by officers of Immigration and Customs Enforcement ("ICE").[8] He is being held at the Philadelphia ICE Field Office and has not been provided a bond hearing.[9] Pablo Matias is detained under the Department of Homeland Security's ("DHS") new interpretation of 8 U.S.C. § 1225(b)(2)(A), which originates from the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*.[10] In accordance with *Hurtado*, Respondents suggest that individuals who have been long-present in the United States without lawful status are "applicant[s] for admission" and subject to mandatory detention under § 1225(b)(2)(A).[11]

---

13, 2026) (identifying that all 201 decisions in this District have rejected the government's position). Among this District's most recent decisions are *Badalov v. Jamison*, No. 26-2663, 2026 WL 1132331 (E.D. Pa. Apr. 27, 2026); *Meran Garcia v. Jamison*, No. 26-2214, 2026 WL 1122608 (E.D. Pa. Apr. 24, 2026); *Garcia Sanchez v. Jamison*, No. 26-2676, 2026 WL 1122349 (E.D. Pa. Apr. 24, 2026); and *Chun Reynoso v. Jamison*, No. 26-2619, 2026 WL 1122037 (E.D. Pa. Apr. 24, 2026).

[3] Pet. ¶¶ 1, 24 [Doc. No. 1].

[4] *Id.* ¶ 2.

[5] *Id.* ¶¶ 2, 5.

[6] *Id.* ¶ 2.

[7] *Id.* ¶ 5.

[8] *Id.* ¶ 6.

[9] *Id.*

[10] 29 I. & N. Dec. 216 (B.I.A. 2025); Pet. ¶¶ 7, 44 [Doc. No. 1]; Opp'n at 4-8 [Doc. No. 5].

[11] *See* Opp'n at 4-8; 8 U.S.C. § 1225(b)(2)(A).

On April 27, 2026, Pablo Matias petitioned for a writ of habeas corpus under 28 U.S.C. § 2241.[12] Consistent with its established practice for recent cases involving individuals detained by the DHS under 8 U.S.C. § 1225(b)(2)(A), this Court ordered Respondents to show cause why Pablo Matias's petition should not be granted.[13] It also scheduled a show cause hearing.[14] By stipulation of the parties, the Court cancelled the show cause hearing and resolved to decide the case on the papers, as the parties requested.[15]

## II.  LEGAL STANDARD

Federal district courts are authorized to grant a § 2241 motion where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[16] It is the petitioner's burden to show that the detention violates the Constitution or federal law.[17]

## III.  DISCUSSION

The decisive issue is whether the mandatory detention provided for in 8 U.S.C. § 1225(b)(2)(A) extends to noncitizens who, despite not being admitted or paroled, have an established presence in the United States.[18] As Respondents acknowledge, courts in this District have confronted this question repeatedly and exhaustively.[19] Without exception, those courts

---

[12] Pet. [Doc. No. 1].

[13] 4/27/26 Order [Doc. No. 2].

[14] *Id.*

[15] 4/28/26 Stipulation and Order [Doc. No. 7].

[16] 28 U.S.C. § 2241(c)(3).

[17] *See Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

[18] Respondents do not contest whether this Court has jurisdiction to review Pablo Matias's petition. In any event, the Court has jurisdiction, as the various INA jurisdiction-stripping statutes, *see, e.g.*, 8 U.S.C. § 1252(g); 8 U.S.C. § 1252(a)(2)(B)(ii); 8 U.S.C. § 1252(b)(9), do not apply. *See Yilmaz*, 2025 WL 3459484, at *2 (concluding that the jurisdiction-stripping statutes are not germane because the petitioner "challenges his detention rather than the initiation of removal proceedings, because [the petitioner] cannot obtain relief for his detention following a final order regarding removal, and because [the petitioner's] detention is not the byproduct of a discretionary determination").

[19] *See* Opp'n at 2 [Doc. No. 5].

have rejected Respondents' position and found that § 1225(b)(2)(A) does not cover noncitizens who have been present in the United States for an extended period.[20] Even so, "[t]his Court considers each case on an *ad hoc* basis, and its rulings turn on the facts of each case at issue."[21]

Section 1225(b)(2)(A) provides as follows:

**(2)      Inspection of other aliens**

**(A)      In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

In arguing why this Court should diverge from its interpretation of § 1225(b)(2)(A) in prior decisions, Respondents cite the Fifth Circuit's decision in *Buenrostro-Mendez v. Bondi*[22] and the Eighth Circuit's decision in *Avila v. Bondi*.[23] Respondents stress that, in those cases, the courts held that "seeking admission" was not a separate requirement from the condition that the individual be an "applicant for admission."[24] Respondents nonetheless recognize that a unanimous three-judge panel in the Second Circuit recently rejected their position in *Barbosa da Cunha v. Freden*.[25]

---

[20] *See id.*; *supra* n.1.

[21] *Diallo v. Bondi*, No. 25-7421, 2026 WL 36534, at *2 (E.D. Pa. Jan. 6, 2026).

[22] 166 F.4th 494 (5th Cir. 2026).

[23] 170 F.4th 1128 (8th Cir. 2026).

[24] Opp'n at 3, 5-8 [Doc. No. 5].

[25] No. 25-3141-pr, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); Opp'n at 3 [Doc. No. 5].

4

The Court need not defer to, and indeed rejects, the reasoning of *Buenrostro-Mendez* and *Avila*. The term "seeking admission," by its plain meaning, connotes present, ongoing action.[26] "Because some affirmative, present action is required, this phrase cannot apply to all noncitizens already residing in the United States."[27] An "applicant for admission" who is "seeking admission" must therefore be a noncitizen at a port of entry seeking to cross into the United States.[28] Respondents' reading would render the term "seeking admission" entirely superfluous.[29] Their reading would also clash with past agency practice and the canon of constitutional avoidance.[30] As a result, the detention of noncitizens like Pablo Matias is governed not by § 1225 but by § 1226(a) and corresponding regulations, which entitle noncitizens to a bond hearing before continued detention is permitted.[31]

Congress's amendment of § 1226 in the Laken Riley Act underscores this point. There, Congress adopted provisions demanding that a noncitizen be detained without a bond hearing if he enters the country illegally and is convicted or charged with certain kinds of crimes.[32] This

---

[26] *See Kashranov*, 2025 WL 3188399, at *6 (" '[S]eeking admission' describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization.").

[27] *Centeno Ibarra*, 2025 WL 3294726, at *5.

[28] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *5.

[29] *See Ndiaye*, 2025 WL 3229307, at *5 (determining that since Congress's " 'choice of words is presumed to be deliberate and deserving of judicial respect,' this Court must give meaning to the words 'an alien seeking admission.' " (quoting *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018)).

[30] *See id.* at *6 (noting that, since 1997, the DHS had applied § 1226(a) to inadmissible noncitizens residing in the United States); *id.* at *7 (an interpretation of § 1225 allowing for the mandatory detention of noncitizens who have long been present in the country would implicate constitutional questions of due process).

[31] *See Yilmaz*, 2025 WL 3459484, at *3; *see also Centeno Ibarra*, 2025 WL 3294726, at *4-7; 8 C.F.R. § 1236.1(c)(8), (d)(1) (stating that bond is available to noncitizens detained under § 1226(a) and that "the immigration judge is authorized to exercise the authority . . . to detain the [noncitizen] in custody, release the [noncitizen], and determine the amount of bond"); *Jorge-Peralta v. Jamison*, No. 26-1775, 2026 WL 1047057, at *4 (E.D. Pa. Apr. 17, 2026) ("[Petitioner's] detention is instead governed by § 1226 because he is a '[noncitizen] already present in the United States.' " (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)).

[32] Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025); 8 U.S.C. § 1226(c)(1)(E) (requiring mandatory detention of inadmissible noncitizens who have been charged with or convicted of certain crimes including burglary, theft, and larceny).

amendment would be meaningless if, as Respondents suggest, § 1225 authorized detention without a bond hearing irrespective of such criminal matters. Other provisions of § 1226 that reserve mandatory detention for when a noncitizen engages in criminal activity would likewise be superfluous on Respondents' reading.[33]

These considerations only amplify following *Barbosa da Cunha*. In *Barbosa da Cunha*, the Second Circuit affirmed an order granting habeas relief to a noncitizen who, like Pablo Matias, entered the country without inspection or admission and remained for over twenty years until his detention under § 1225(b)(2)(A).[34] The Second Circuit provided comprehensive analysis of the text of § 1225 and § 1226, the context and structure of those provisions, their historical underpinnings, statutory purpose, relevant executive and legislative practice, and the constitutional avoidance doctrine.[35] Notably, the court found § 1225(b)(2)(A) inapplicable and observed that the plain text of § 1226(a), which governs detention "pending a decision on whether the alien is to be removed," unmistakably "sweeps in both inadmissible and deportable aliens" so as to apply "to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible."[36] The Second Circuit also expanded upon points already made in this Opinion and, among other things, determined that the government's departure from long-settled executive practice weighed against its position.[37]

For the foregoing reasons, Pablo Matias may be detained under the INA only if, pursuant to § 1226(a) and applicable regulations, he receives a bond hearing and the facts show that he

---

[33] *See, e.g.*, 8 U.S.C. § 1226(c)(1)(B) (requiring a noncitizen who is deportable because of criminal convictions to be detained).

[34] 2026 WL 1146044, at *1-2.

[35] *See generally id.*

[36] *Id.* at *5.

[37] *Id.* at. 2, 19-20.

poses a risk of flight or is a threat to the safety of his community.[38] Respondents do not suggest that Pablo Matias is likely to flee or that he is dangerous. Nor does the record illustrate any such concern—Pablo Matias has been present in the United States for over twenty years, has no criminal background, and has entrenched ties to his community through his three children, who are United States citizens.[39] Accordingly, a bond hearing is unnecessary, and the Court will order Pablo Matias's immediate release.[40]

Because Pablo Matias's detention without a bond hearing violates the INA, the Court need not reach his due process argument.

### IV.   CONCLUSION

For the foregoing reasons, the DHS had no legal authority to mandatorily detain Pablo Matias without a bond hearing under 8 U.S.C. § 1225(b)(2)(A). Accordingly, the Court will grant his petition and issue a writ of habeas corpus. An appropriate order will follow.

---

[38] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *4, *8 n.69; 8 C.F.R. § 1236.1(c)(8), (d)(1).

[39] Pet. ¶¶ 2, 5 [Doc. No. 1].

[40] *See Karshranov*, 2025 WL 3188399, at *8 ("[A] habeas court has 'the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.'" (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008))).